# Richmond.

## GINTER v. BREEDEN.

### MARCH 8th, 1894.

1. LACHES—*Loss of evidence—Limitation.*—Delay of twenty-six years in bringing suit to enforce a vendor's lien, where the delay is explained by the loss of the court records and the destruction of the creditor's books showing the existence of the lien, *held*, will not prevent a recovery. And there is no limitation to the life of such lien saving that arising from presumption of payment from lapse of time. *Tunstall* v. *Withers*, 80 Va., 892.

2. IDEM—*Presumption of payment—Stay law.*—Where vendor's lien accrued in 1860, the stay law period must be excluded from the twenty years necessary to create the presumption of payment, and no such presumption had arisen when this suit was brought in 1888.

3. ASSIGNOR—*Declarations.*—Declarations, either oral or written, of assignor that a chose in action had been paid, *held*, inadmissible unless made before the assignment thereof. *Wilcox* v. *Pearman*, 9 Leigh, 146; and the same is true as to vendor of property after sale as against vendee thereof.

4. WITNESSES—*Incompetency.*—Where one of the contracting party dies, the opposing party cannot testify, and his incompetency renders the co-contractors of the decedent incompetent, and also their assignee, and the heir of any deceased assignee, who is a party to the suit and who is interested in the result. *Mason* v. *Wood*, 27 Gratt., 783.

5. EXCHANGE OF LANDS—*Liens—Case at bar.*—In 1859, by written contract, H. and B. exchanged lands, B. giving bonds for boot. H. sold his tract to G. and I., taking their bonds. No conveyances. H. assigned some of the bonds to plaintiff. Then H., G., I., and B.'s widow essayed to annul the exchange, the sale, and the bonds. H. took his former land back, and sold it to L. on condition he would assume payment of B.'s bonds, and the widow took possession of B.'s former land; but no care was taken of the assignee's interests :

HELD :
> The assignee can subject H.'s former land to the lien of B's bonds, and B.'s former land to the lien of the bonds of G. and I.

Appeal from decree of circuit court of Rockingham county, rendered October 28, 1890, in two causes, heard together, of John E. Roller and others, complainants, against George W. Breeden and others, defendants, and of John E. Roller and others, complainants, against William Breeden's administrator and others, defendants. Ginter came into these causes by petition. The decree being adverse to the complainants, they appealed. Opinion states the case.

*John E. Roller*, for appellants.

*Sipe & Harris*, for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

It appears from the record, that, on the 16th day of March, 1859, William Breeden was the owner of 500 acres of mountain land in Page county, Virginia; and, on the same day, Simeon J. Harnsberger was the owner of a tract of 244¾ acres of land in Rockingham county, Virginia. On the said 16th day of March, 1859, the said William Breeden and Simeon J. Harnsberger made a trade or exchange of the said two tracts of land, by the operation of which exchange, William Breeden became the owner of the 244¾ acre tract in Rockingham county, and Simeon J. Harnsberger became the owner of the 500 acre tract in Page county. The 244¾ acre tract, which had belonged to Simeon J. Harnsberger, being far more valuable than the 500 acre tract which had belonged to William Breeden, the said William Breeden agreed to pay boot money, and duly executed and delivered his several bonds to Simeon J. Harnsberger for instalments of said boot money, reciting in said bonds the consideration as being for land purchased by him of the said S. J. Harnsberger. These bonds were as follows: One for $110, due April 14th, 1860, with interest from date; one for $146 66⅔–100, due April 14th, 1861, without interest till

due; one for $73 33⅓–100, due April 14th, 1861, without interest till due; one for $220, due April 14th, 1862, without interest till due; one for $220, due April 14, 1863, with interest from April 14th, 1762; one for $120, due April 14th, 1864, without interest till due. In addition to these writings obligatory from William Breeden to Simeon J. Harnsberger, the said contracting parties entered into a contract in writing, which recited the exchange of the two tracts aforesaid, describing each of them, and stipulating that the said Simeon J. Harnsberger was, at the time of signing, entitled to a deed for the 500 acre tract of land in Page county; and that as soon as Breeden has paid the first one of his said bonds he would be entitled to a deed for the 244¾ acre tract in Rockingham county with retention of vendor's lien for the further payments. This contract, in writing, was signed and sealed by the said parties on the 16th day of March, 1859.

On the 25th day of September, 1860, the said Simeon J. Harnsberger sold the said 500 acre tract of land in Page county to George W. Breeden and J. M. Breeden, and took from them four bonds of $66 66⅔–100, payable in one, two, three, and four years, with interest from date, said bonds reciting that they are for land.

No formal deeds were executed by either William Breeden to S. J. Harnsberger, or S. J. Harnsberger to William Breeden, or from S. J. Harnsberger to George W. Breeden and J. M. Breeden.

Of the aforesaid six bonds executed by William Breeden to Simeon J. Harnsberger for boot money, the first three have been paid; of the last three bonds, two for $220 each, were assigned by S. J. Harnsberger to M. M. Sibert, and by Sibert to petitioner Ginter; and upon these said first two bonds judgment was rendered in the county court of Rockingham county at the May term, 1868.

The remaining bond for $120 was assigned by S. J. Harnsberger to M. M. Sibert, and by Sibert to John E. Roller, and

this also remains unpaid. Of the four bonds executed by. George W. Breeden and J. M. Breeden to S. J. Harnsberger for the purchase of the 500-acre tract of land in Page county, none have been paid, but were assigned by S. J. Harnsberger to M. M. Sibert; and by Sibert two of these bonds were assigned to petitioner Ginter, who obtained judgment upon them at the April term, 1868, of the county court of Rockingham county. The remaining two of the said four purchase-money bonds were assigned by M. M. Sibert to John E. Roller.

Upon the commencement of the late civil war the said William Breeden entered the Confederate army, and in the early part of the war he died. Thereupon his widow, who was his second wife, and the heirs undertook (as the defendants alleged. and tried to prove by what the petitioner claims was an incompetent witness and by illegal and inadmissible testimony) to. cancel and rescind the aforesaid contract of exchange of lands between William Breeden, then deceased, and S. J. Harnsberger, the said S. J. Harnsberger consenting to the said annulment and rescision of the said contract of exchange; and upon the payment by John K. Long, or the assumption by him, of the Breeden bonds, the said S. J. Harnsberger placed the said John K. Long in possession of the 244¾-acre tract of land in Rockingham county, and, at the same time, the contract of sale between the said S. J. Harnsberger and George W. and J. M. Breeden for the purchase by them of the 500-acre tract of. land in Page county, was also rescinded, and the said widow and heirs of William Breeden were placed in possession of said 500-acre tract. But in neither case did the said S. J. Harnsberger or the widow and heirs of William Breeden, deceased, or George W. and J. M. Breeden, take care of the interest of the assignee of the said S. J. Harnsberger, the said M. M. Sibert, or those holding the said purchase-money bonds. under him. During the civil war a large portion of the records of Rockingham county were destroyed by the federal army, and it was not until a chancery suit involving the estate

of S. J. Harnsberger, then recently instituted, disclosed a clue to the evidence of these debts and those assignments, that these suits were instituted to January rules, 1888.

The circuit court, upon the final hearing, overruled the exceptions taken by appellant to the competency, as a witness, of the daughter and heir of one of the parties to these transactions, one John K. Long, whose administrator and heirs are parties to these causes, and admitted her testimony, but sustained the exceptions taken to the report of the master which established the lien upon the 500-acre tract of land in Page county of the two purchase-money bonds for $66 66⅔ each, held by appellant, and also of the two like bonds of like amount held by J. E. Roller as assignee; and also the lien upon the 244¾-acre tract in Rockiagham county of the two bonds of $220 each, held by appellant as assignee, and also of the $120 bond held by John E. Roller as assignee; and thereupon decreed a firm and stable title to the 500-acre tract of the land in Page county to and in the widow and heirs of William Breeden, deceased; and also a firm and stable title to the 244¾-acre tract of land in Rockingham county in and to John K. Long and his vendees; and decreed costs to the defendants in each cause, and dismissed them from the docket.

The circuit court erred in overruling the exception to the competency of Mary A. Haney, the daughter and heir of John K. Long. The deaths of William Breeden and S. J. Harnsberger had made M. M. Sibert and his assignees, including appellant, incompetent; and their incompetence had, in turn, made the parties opposing them in interest, incompetent. See *Mason* v. *Wood*, 27 Gratt., 783. She was also incompetent because of the interest of herself and husband in the real estate descended to her from the estate of her father, John K. Long, deceased. And, having had children born alive, her husband had an estate of curtesy. She was incompetent upon both grounds; but all she attempts to prove are certain alleged declarations made by Simeon J. Harnsberger to the effect, that the contract between

him and William Breeden, deceased, had been rescinded. These declarations, even if proved by competent witnesses, cannot be admitted, as against his own assignees. See *Wilcox* v. *Pearman,* 9 Leigh, 146.

Simeon J. Harnsberger is dead, and is not here to protect, either his own repute as an honest man, or the interest imparted by him to his assignee; and it is not to be assumed that he did a deliberate and conscious wrong to his own assignee. The declarations of a vendor of property, real or personal, (nor of the assignor of a chose in action) cannot be given in evidence against a party who had *previously* acquired his title by assignment from him. It would be vicious and dangerous to permit the vendor or assignor thus to defeat the right or title which he had conveyed or assigned to another, and thereby to deprive that other of the protection to be derived from a cross-examination. *Pettit* v. *Jennings,* 2 Rob. Reports, 676.

In *Wilcox* v. *Pearman,* 9 Leigh, 146, Judge Tucker, delivering the unanimous opinion of the court, said : " The acknowledgment of an assignor that he had been paid his debt is no evidence against the assignee unless it was made anterior to the assignment; and this is equally true whether his acknowledgment is oral or written. Now a receipt is nothing but a written acknowledgment, and is not evidence against the assignee, unless it is proved to have been given anterior to the assignment. The proof of this is upon the debtor. It was argued that the date of the receipt must be taken as the true date until the contrary is proved. I cannot think so. If it were so, every such paper would prove itself, which cannot be. Moreover, the parties to it know truly when it was given; the assignee cannot know. The parties to it must, therefore, prove it; since otherwise, however false and fraudulent it be, it will prove itself to be true, without the possibility of contradiction."

The alleged contract of recission is proved only by the witness Mary E. Hancy, a daughter and heir of John K. Long,

deceased, who is an incompetent witness by the death of parties to the transaction, and by the other disqualifying circum·stances hereinbefore set forth. She is pecuniarily interested in the result of this suit; and, as heir of her father, John K. Long, deceased, she is liable to the extent of assets received from his estate, and her husband is interested with her in these assets. All that she testifies to are the declarations of S. J. Harnberger, who is dead; and even if they were made, as alleged, they were made after the death of William Breeden, and were not made in the presence of Harnsberger's assignees, the holders for value of the purchase-money bond given by William Breeden to S. J. Harnsberger for exchange of land as boot money, and secured by vendor's lien upon the land.

In *Daley's Ex'or* v. *Walden, &c.*, 80 Va. (5 Hansbrough), 572, it was held that an assignment of a chose in action need not, in Virginia, be recorded; and that declarations made and letters written by the assignor subsequent to the assignment are inadmissible as against his assignee. At the death of William Breeden—previous to the alleged contract of recission—all his real estate became assets for the payment of his debts, and the rights of his creditors had attached to his property, real and personal. And S. J. Harnsberger could not assume possession or control of these assets, and enter into a contract with William Breeden's widow and heirs, by which he could exclude his own assignees and deprive them of their vendor's liens, and then sell the land to John K. Long. At least four of the bonds for the purchase money of the land sold to William Breeden by S. J. Harnsberger, and by him assigned to M. M. Sibert, had not even matured at that date (1861) but fell due in April and September, 1863 and 1864. See *Lewis* v. *Overby*, 31 Gratt., 619; *Ryan* v. *McLeod*, 32 Gratt., 174; *Scott* v. *Ashlin*, 85 Va. (10 Hansbrough), 588.

The circuit court erred in holding that the alleged contract of rescission of the exchange of lands between William Breeden and S. J. Harnsberger was legally and sufficiently proved; and

in sustaining the exceptions filed by the defendants to the master's reports, which had sustained the claim of the appellant as assignee of the vendor's lien bonds, and established them as liens upon the tracts of land in controversy; and the circuit court erred in not holding that all the assets of the estate of William Breeden, deceased, including the Rockingham tract of land, are liable for the payment of his debts; and in not holding that the rights of the appellant as the assignee and holder of the purchase-money bonds against the estate of William Breeden, deceased, and also of the bonds given for the sale of the Page tract of land, are superior to the rights and equities of his heirs at law; and the decree giving them a valid title to the Page tract of land, and giving to their vendees, the heirs of John K. Long, deceased, a valid title to the Rockingham county land, without providing for the payment of these assigned purchase-money bonds is unjust and erroneous.

The defence of *laches* is set up. The debts sought to be enforced in this suit are valid and subsisting debts evidenced by purchase-money bonds and vendor's liens, and they are not barred by statute of limitations, or by the presumption of payment. In the case of *Tunstall* v. *Withers*, 86 Va. (11 Hansbrough), 952, declares that there is no limitation to the life of a vendor's lien, save that arising from the lapse of time sufficient to create a presumption of payment. In that case the vendor's lien accrued in 1860, and suit was not brought until 1886; and yet it was held that neither the statute of limitations, nor presumption of payment, nor *laches* affected the lien. Under the authority of that case, we must exclude the period of the stay law, from the twenty years necessary to create the presumption of payment; and this suit was brought in the court below more than a year before the expiration of that time. *Laches*, and even gross *laches*, is not enough to raise a presumption of the payment or the abandonment of a vendor's lien; it must be *gross laches unexplained*, together with evidence affording the presumption of abandonment of the right.

In the case at bar, not only is there no such lapse of time, but the delay in bringing the suit is explained.    The destruction of the court records of Rockingham county ; the removal of appellant's former attorney from the State to the Pacific coast, and the destruction of Major Ginter's books are ample explanation of the difficulties and delay in bringing the suit.

For the foregoing reasons we are of opinion that the decree complained of is erroneous, and it must be reversed and annulled.

DECREE REVERSED.